[Cite as *State v. O'Keefe*, 2019-Ohio-841.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2018-L-088** |
| - vs - | : | |
| JOSHUA T. O'KEEFE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 000810.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105, Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Hector G. Martinez*, and *Leslie S. Johns*, The Martinez Firm, 4230 State Route 306, Suite 240, Willoughby, OH 44094 (For Defendant-Appellant).


MARY JANE TRAPP, J.

{¶1} Joshua T. O'Keefe appeals the nine-year sentence imposed by the Lake County Court of Common Pleas. At issue is whether the sentence for aggravated vehicular homicide is disproportionate and inconsistent with other similar cases and whether the trial court erred in imposing the 180-day maximum term of imprisonment for operating a vehicle under the influence of alcohol ("OVI"). After a careful review of the

record and pertinent law, we find Mr. O'Keefe's assignments of error without merit and affirm the trial court's judgment.

**Substantive History and Procedural Background**

{¶2} Mr. O'Keefe's convictions stem from the devastating consequences of driving under the influence of alcohol. Mr. O'Keefe and his friend, Taylor Castilyn, had been drinking at a local bar despite the fact that Ms. Castilyn was underage. When they left the bar in Mr. O'Keefe's father's car, Mr. O'Keefe was driving under suspension and over the legal blood alcohol limit, so when he failed to yield at a stop sign and was being pursued by the police, he made the decision to flee. In an attempt to elude the officer, Mr. O'Keefe turned into an unlighted private driveway, turned off the lights to the vehicle, but continued driving at a high rate of speed. His car left the driveway, crashed through one section of fence, turned, and crashed through another section of fence. A cross bar from the fence smashed through the passenger side window into Ms. Castilyn's face and head, causing catastrophic injuries to her face, skull and brain. She later succumbed to those injuries at the hospital.

{¶3} Mr. O'Keefe voluntarily entered a written plea of "guilty" to the charge of aggravated vehicular homicide, a second degree felony in violation of R.C. 2903.01(A)(1)(a); failure to comply with an order or signal of a police officer, a third degree felony in violation of R.C. 2921.331(B); and operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI"), a first degree misdemeanor in violation of R.C. 4511.19(A)(1)(a).

{¶4} The court accepted Mr. O'Keefe's guilty plea, finding that he waived his right to have the case presented to the grand jury and agreed to proceed by way of information. The court then deferred the sentencing hearing until May 21, 2018. A pre-sentence

investigation and report, a victim impact statement, and a drug and alcohol evaluation were ordered.

{¶5}    At the sentencing hearing, four members from Mr. O'Keefe's family and the community gave oral statements and Mr. O'Keefe's counsel presented an extensive sentencing memorandum together with 91 letters of support.  In turn, the state presented victim impact statements, both written and oral, including four members of Ms. Castilyn's family describing the loss of her love and their recommendation for a maximum prison term.  The state advocated the maximum term of 11 and a half years.

{¶6}    In imposing its sentence, the court stated that in addition to the record, oral statements, the victim impact statements, the pre-sentence reports, and the drug and alcohol evaluation, it considered the purposes and principles of felony sentencing as set forth in R.C. 2929.11, as well as those of misdemeanor sentencing as set forth in R.C. 2929.21, including those related to the seriousness of the crime and the likelihood that Mr. O'Keefe will commit crimes in the future.

{¶7}    The court found the crimes to be more serious than normal because the victim suffered "very serious, severe, physical harm" and "suffering" that resulted in the loss of Ms. Castilyn's life.  The court also considered the suffering of her family.  The court then determined that Mr. O'Keefe's relationship with his victim facilitated the commission of the crime.

{¶8}    In reviewing factors making recidivism more likely, the court noted that Mr. O'Keefe had been driving intoxicated that night while under suspension, and moreover, his conviction record included eight misdemeanor traffic offenses within four years, which was indicative of "disrespect and disregard of law."  The court also reviewed factors that would indicate recidivism less likely:  Mr. O'Keefe voluntarily entered a guilty plea by way

3

of information, accepted responsibility, and showed genuine remorse for the criminal conduct and the consequences of his conduct. In addition, the trial court considered that Mr. O'Keefe has no prior delinquency other than the traffic offenses and no history of criminal convictions.

{¶9} Finally, the trial court observed there were mistakes and lapses in judgment, but also "a conscious effort," noting "[i]t wasn't a mistake to attempt to flee and elude the police." While the trial court accepted the fact that Mr. O'Keefe was not likely to reoffend, it noted the court also has the responsibility to deter others from future crimes.

{¶10} Ultimately, the trial court sentenced Mr. O'Keefe to a mandatory, definite term of 7 years with respect to the aggravated vehicular homicide, a definite term of 18 months with respect to fleeing from an order or signal of a police officer, and 6 months with respect to the OVI, all to run consecutively to one another, for a total term of imprisonment of 9 years due to the serious nature of Mr. O'Keefe's conduct.

{¶11} Mr. O'Keefe timely appealed, and now brings the following assignments of error:

{¶12} "[1.] The trial court erred when it sentenced Appellant in a manner inconsistent and disproportionate with other, similar Ohio Cases.

{¶13} "[2.] The trial court erred when it sentenced Appellant to a maximum jail term of 180 days for one (1) count of Operating a Vehicle Under the Influence of Alcohol."

**Felony Sentencing**

{¶14} In his first assignment of error, Mr. O'Keefe contends the trial court erred when it sentenced Mr. O'Keefe to a nine-year term of imprisonment in that the sentence is inconsistent and disproportionate to similar crimes.

***Standard of Review***

{**¶15**} "The Supreme Court of Ohio in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, held that appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2) when reviewing felony sentences." *State v. Talley*, 11th Dist. Lake Nos. 2017-L-143 & 2017-L-144, 2018-Ohio-5065, ¶45, quoting *Marcum* at ¶1. "Thus, applying the plain language of that statute, the Supreme Court held that 'an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.'" *Id.* "The clear and convincing standard in R.C. 2953.08(G)(2) is highly deferential." *Id.*, quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶21.

{**¶16**} Moreover, the Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, held that R.C. 2929.11 and R.C. 2929.12 do not "mandate judicial fact-finding; rather in exercising its discretion, a court is merely required to 'consider' the purposes of sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12." *State v. Lloyd*, 11th Dist. Lake No. 2006-L-185, 2007-Ohio-3013, ¶44, citing *Foster* at ¶36-42.

{**¶17**} Further, "sentencing consistency is not derived from the trial court's comparison of the current case to prior sentences for similar offenders and similar offenses." *Id.* at ¶51, citing *State v. Spellman*, 160 Ohio App.3d 718, 2005-Ohio-2065, ¶12 (11th Dist.). "Instead, 'it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency.'" *Id.*, quoting *State v. Swiderski*, 11th Dist. Lake No. 2004-L-112, 2005-Ohio-6705, ¶58. "Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory guidelines and factors." *Id.*

5

### Consistency and Proportionality in Sentencing

**{¶18}** Mr. O'Keefe contends that his nine-year term of imprisonment is inconsistent and disproportionate with similar, other crimes because the trial court failed to properly consider the "more serious" and "less serious" factors found in R.C. 2929.12(B) and (C).

**{¶19}** A review of the sentencing hearing transcript and the trial court's judgment entry reveals this argument is without merit. As noted above, the trial court expressly addressed the factors that indicated recidivism more and less likely as well as the seriousness of the crime. This includes those factors Mr. O'Keefe argues should have been given more weight, such as the oral and written statements in his support, the voluntariness of his plea, and the Ohio Risk Assessment System Analysis that indicated Mr. O'Keefe is less likely to reoffend in the future. Indeed, the court thoroughly and conscientiously weighed each factor, specifically discussing each of these during the hearing, more than satisfying its statutory obligation.

**{¶20}** Quite simply, the trial court satisfies its obligation to consider the seriousness and recidivism factors by stating that it considered them. *Lloyd* at ¶44. "'[T]he trial court is not obligated * * * to give any particular weight or consideration to any * * * sentencing factor.'" *State v. Spencer*, 11th Dist. Trumbull No. 2017-T-0117, 2018-Ohio-4276, ¶46, quoting *State v. Pishner*, 11th Dist. Portage No. 2017-P-0004, 2017-Ohio-8689, ¶20, quoting *State v. Holin*, 174 Ohio App.3d 1, 2007-Ohio-6255, ¶34 (11th Dist.).

**{¶21}** There is nothing in this record indicating that the nine-year sentence in this case, less than the maximum possible sentence of 11 and a half years, is contrary to law.

**{¶22}** Mr. O'Keefe's first assignment of error is without merit.

**Misdemeanor Sentencing**

**{¶23}** Mr. O'Keefe next argues that the trial court erred in sentencing him to the maximum term of 180 days imprisonment for one count of OVI.

*Standard of Review*

**{¶24}** "Misdemeanor sentencing is within the discretion of the trial court and a sentence will not be disturbed absent an abuse of discretion." *State v. Corbissero*, 11th Dist. Ashtabula No. 2011-A-0028, 2012-Ohio-1449, ¶53, quoting *Conneaut v. Peaspanen*, 11th Dist. Ashtabula No. 2004-A-053, 2005-Ohio-4658, ¶18, citing *State v. Wagner*, 80 Ohio App.3d 88, 95-96 (12th Dist.1992). "* * * [T]he term 'abuse of discretion' is one of art, 'connoting judgment exercised by a court, which does not comport with reason or the record.'" *Id.*, citing *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Stated differently, an "abuse of discretion," is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *Id.*, citing *State v. Beechler*, 2d Dist. Clarke No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶25}** "In fashioning an appropriate sentence in a misdemeanor case, the trial court must consider the factors set forth under R.C. 2929.22. Those factors include: the nature and circumstances of the offense; whether the offender has a history of criminal behavior and the likelihood of recidivism; whether there is a substantial risk the offender will be a danger to others; whether the offender's conduct has been characterized by a pattern of 'repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;' and whether the victim's age, disability or other factor made him or her more vulnerable. R.C. 2929.22(B)(1)(a)-(e)." *Id.* at ¶54, quoting *City of Conneaut v. Coleman*, 11th Dist. Ashtabula No. 2010-A-0062, 2011-Ohio-5099, ¶22.

7

**{¶26}** "A trial court's failure to consider the R.C. 2929.22 factors amounts to an abuse of discretion." *Id.* at ¶55, *See State v. Rogers*, 11th Dist. Trumbull Nos. 2009-T-0051 & 2009-T-0052, 2010-Ohio-197, ¶11. "Absent a showing otherwise, however, if the sentence lies within the statutory limit, a reviewing court will presume that the trial judge followed the standards required by the statute." *Id.,* citing *State v. Peppeard,* 11th Dist. Portage No. 2008-P-0058, 2009-Ohio-1648, ¶75. "A silent record raises the presumption that the trial court considered all of the factors." *Id.* "Further, there is no requirement that the court state on the record it considered the statutory sentencing criteria." *Id.*, citing *State v. Kish*, 11th Dist. Lake No. 2010-L-138, 2011-Ohio-4172, ¶8, citing *Peaspanen* at ¶29.

**{¶27}** No evidence in the record suggests that the trial court failed to consider the required statutory factors, nor does Mr. O'Keefe point to anything in the record that would lead this court to believe the trial court abused its discretion. As noted in the first assignment of error, the trial court amply reviewed all relevant factors in imposing Mr. O'Keefe's sentence.

**{¶28}** Mr. O'Keefe specifically takes issue with the modification of his sentence during the hearing due to a misstatement on the state's part during a pre-sentence conference in chambers, regarding whether the sentence on the OVI charge must run consecutive to the aggravated vehicular homicide sentence.

**{¶29}** The court initially stated during the hearing "[A]nd I specifically find that consecutive sentences were not disproportionate to the seriousness of the Defendant's conduct and to the danger he poses to the public. And again as matter of law because of the nature of the failure to comply, Count 1 and 2 will be served consecutive to each other; Count 3 [the OVI charge] will be serv[ed] [sic] concurrent with the other two. The

8

total prison term effectively will be 9 years in prison, 7 years of which are mandatory as a matter of law. * * *."

{¶30} After being informed of the requirement, the court stated, "All right. Well, no, if it's go[t] [sic] to be sentenced that way, I will make the modification. And what we'll do is we're still going to do the 9 years. So, we will make Count 2, 18 months instead of 24, and we'll make the OVI 6 months, and it will all be run consecutive. But the end result is still going to be the same, 9 years."

{¶31} Clearly, correcting the sentence without altering the term imposed to accurately reflect the change of plea agreement is not an abuse of discretion. Upon notification of the error, the court merely amended the sentence to comply with the statutory requirements without affecting the total time to be served.

{¶32} Mr. O'Keefe's second assignment of error is without merit.

{¶33} For the foregoing reasons, we affirm the judgment and sentence of the Lake County Court of Common Pleas.


THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.